UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:18-cv-00121-FDW-DSC

| | |
|---|---|
| ANTONIO BILOTTA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> NANCY A. BERRYHILL, ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | ORDER |

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 12) and Defendant's Motion for Summary Judgment (Doc. No. 16). Pursuant to 28 U.S.C. § 636 (b)(1)(B), these motions were referred to the Magistrate Judge David Cayer for issuance of a Memorandum and Recommendation ("M & R") for disposition (Doc. No. 19). The M & R respectfully recommends Plaintiff's Motion for Summary Judgment be denied, Defendant's Motion for Summary Judgment be granted, and the Commissioner's decision be affirmed. After Plaintiff filed objections to the M & R (Doc. No. 20) and Defendant rested on the memorandum previously filed with this Court (Doc. Nos. 17, 21), this matter is now ripe for review.

For the reasons set forth, the Court OVERRULES Plaintiff's objections (Doc. No. 20), ACCEPTS and ADOPTS the M & R (Doc. No. 19), DENIES Plaintiff's Motion for Summary Judgment (Doc. No. 12), GRANTS Defendant's Motion for Summary Judgment (Doc. No. 16), and AFFIRMS the Commissioner's decision.

**I. BACKGROUND**

Plaintiff does not lodge any specific objections to the procedural history and factual background or standard of review. Having conducted a careful review of these portions of the

1

M & R, the Court finds the M & R's treatment thereof is correct and supported by the record. See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee note) (holding when there is no objection, "a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation'"). Thus, the portions of the M & R titled "Procedural History" and "Standard of Review" are adopted and incorporated by reference as if fully set forth herein. (Doc. No. 19, p. 1-4). Because the procedural posture before this Court is different than that of the magistrate judge, the Court provides a short review of the applicable legal authority for reviewing an M & R.

## II. STANDARD OF REVIEW

### A. Review of the Commissioner's Determination

Pursuant to the Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), this Court's review of a final decision of the Commissioner of Social Security is limited to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, 42 U.S.C. § 405(g); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Rhyne v. Astrue, 3:09–cv–412–FDW–DSC, 2011 WL 1239800, at *2 (W.D.N.C. Mar. 30, 2011). Furthermore, "it is not within the province of a reviewing court to determine the weight of evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays, 907 F.2d at 1456; see also Rhyne, 2011 WL 1239800 at *2.

Substantial evidence is "more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence that a reasonable mind would accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th

Cir.1986) (alteration in original) (quoting Richardson, 402 U.S. at 401). Thus, if this Court finds the Commissioner applied the correct legal standards and his decision is supported by substantial evidence, the Commissioner's determination may not be capriciously overturned.

**B. Review of the Memorandum and Recommendation**

In this case, the M & R recommended: (1) Plaintiff's Motion for Summary Judgment be denied; (2) Defendant's Motion for Summary Judgment be granted; and (3) the Commissioner's determination be affirmed. (Doc. No. 19, p. 1). The M & R found there was "substantial evidence to support the ALJ's evaluation of the record and his ultimate determination that Plaintiff was not disabled." Id. at 7–9.

The Federal Magistrate Act states a district court "shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). De novo review is not required, however, "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982); see also Diamond, 416 F.3d at 315. Objections to an M & R must specifically identify portions of the report and the basis for those objections. Fed. R. Civ. P. 72(b). Furthermore, "a general objection to a magistrate judge's findings is not sufficient—'a party must object to the [magistrate's] finding or recommendation . . . with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008) (alteration in original) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)). General objections include those that merely restate or reformulate arguments a party has made previously to a magistrate judge. See Jackson v. Astrue, No. 1:09–cv–467, 2011 WL 1883026

(W.D.N.C. May 17, 2011); Aldrich v. Bock, 327 F.Supp.2d 743, 747 (E.D. Mich. 2004) ("A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context."). "Examining anew arguments already assessed in the [M & R] would waste judicial resources; parties must explain why the [M & R] is erroneous, rather than simply rehashing their prior filings and stating the report's assessment was wrong." Hendrix v. Colvin, No. 5:12–cv–01353, 2013 WL 2407126, at *4 (D.S.C. June 3, 2013). "General or conclusive objections result not only in the loss of de novo review by the district court, but also in the waiver of appellate review." Brock v. Colvin, No. 2:13–cv–0039–FDW–DSC, 2014 WL 5328651, at *3 (W.D.N.C. Oct. 20, 2014) (quoting Thompson v. Covenant Transp., Inc., No. 1:07-cv-275, 2008 WL 4372789, at *6 (W.D.N.C. Sept. 22, 2008)).

### III. ANALYSIS

Plaintiff objects to the M & R on three grounds: (1) the ALJ erred in not finding Bilotta is illiterate; (2) the ALJ cannot rely on vocational expert ("VE") testimony in conflict with the Dictionary of Occupational Titles ("DOT") without first obtaining an explanation; and (3) the Residual Functional Capacity ("RFC") assessment is unexplained and incomplete. (Doc. No. 20). The Court reviews these objections de novo.

**A. Objection to the M & R Concerning Determination of Plaintiff's Educational Level**

Plaintiff's first objection is the M & R incorrectly affirmed the ALJ's determination that Plaintiff had a marginal education rather than being illiterate. Id. at 1–2. Findings regarding Plaintiff's educational level are pertinent to step five of the sequential evaluation when the ALJ

looks to the medical-vocational guidelines to determine whether Plaintiff has the ability to perform other work in the national economy. See generally Coffman v. Bowen, 829 F.2d 514, 518 (4th Cir. 1987). The Commissioner will "consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. § 404.1564(b)(1). A claimant with a "marginal education," by contrast, has "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs." 20 C.F.R. § 404.1564(b)(2). "[F]ormal schooling at a 6th grade level or less" is generally considered a marginal education. Id. The Regulations provide an individual's education level will generally be classified as his years of formal schooling, unless there is contradictory evidence. See 20 C.F.R. § 404.1564(b).

Upon review of all the evidence in the record, the Court finds substantial evidence supports the ALJ's finding that Plaintiff is of marginal education. Plaintiff testified that he started but did not complete the third grade, suggesting Plaintiff has a "marginal education" pursuant to 20 C.F.R. § 404.1564(b)(2). (Tr. 72). Moreover, Plaintiff stated in a Disability Report that he can read and understand English and can write more than his name in English. (Tr. 389); see Joines v. Colvin, 3:14–cv–00396–MOC, 2015 WL 1249579, at *10 (W.D.N.C. Mar. 18, 2015) (holding the ALJ's determination was supported by substantial evidence where the claimant reported formal schooling and stated in a disability report that he was able to read and understand English and write more than his name in English despite testifying to the contrary). Evidence in the record also revealed Plaintiff had been able to fill out written psychological testing in English and had been able to testify at several examinations in English without the aid of an interpreter. (Tr. 16). Furthermore, despite Plaintiff's allegations of not being able to read and write, his formal educational level, and

the results of psychometric testing, Plaintiff performed skilled work as a tile setter for twenty years.[1]  (Tr. 15–16); see 20 C.F.R. §§ 404.1564(a), 416.964(a) ("Past work experience and the kinds of responsibilities you had when you were working may show that you have intellectual abilities, although you may have little formal education.").  Although the Court acknowledges there is evidence in the record to the contrary, "it is not the province of this court to reweigh the evidence before the Commissioner, but instead only to ensure application of the correct legal standards and that the Commissioner's decision is supported by substantial evidence."  Joines, 2015 WL 1249579, at *10; see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) ("[T]he threshold for such evidentiary sufficiency is not high").  Thus, Plaintiff's first objection is OVERRULED.

### B. Objection to the M & R Concerning SSR 00–4p

Plaintiff's second assignment of error is the ALJ erred by not evaluating the inconsistency between the VE's testimony and the DOT information, and the ALJ's failure to explain and resolve the conflict constitutes reversible error.  (Doc. No. 20, p. 2–3).

Social Security Ruling ("SSR") 00–4p provides the ALJ will rely on both the DOT and the VE testimony to determine whether a claimant can find work in the national economy suited to his RFC.  Fisher v. Barnhart, 181 F. App'x 359, 365 (4th Cir. 2006).  Noting the sources are typically consistent, SSR 00–4p nonetheless provides that when there is an apparent unresolved conflict

---

[1] The Regulations provide:

> Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity.

20 C.F.R. § 404.1568(c).

between VE evidence and the DOT, an ALJ must (1) inquire, on the record, whether the VE's testimony conflicts with the DOT, and (2) if an apparent conflict exists, obtain a reasonable explanation for the apparent conflict. Pearson v. Colvin, 810 F.3d 204, 207–08 (4th Cir. 2015) (citing SSR 00–4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). Simply asking the VE if her testimony is consistent and receiving an affirmative answer will not satisfy the ALJ's obligation under SSR 00–4p. Id. at 208-09. Rather, an "ALJ independently must identify conflicts between the [VE's] testimony and the [DOT]," id. at 209, and "explain the resolution of the conflict irrespective of how the conflict was identified," SSR 00-4p, 2000 WL 1898704, at *4.

During the hearing, the VE offered four occupations in response to the hypothetical question from the ALJ that found Plaintiff capable of performing "medium work" with some additional limitations. (Tr. 60–61). The ALJ then asked the VE which of the "medium work" jobs would be available if Plaintiff were limited to jobs "with no requirement to read or write in English," and the VE identified three jobs—cleaner II (DOT #919.687-014), dining room attendant (DOT #311.677-018), and laundry laborer (DOT #361.687-018). (Tr. 62). However, the DOT indicates all three jobs are "Language Level 1," which require reading 95–120 words per minute and recognize the meaning of 2,500 two- or three-syllable words. See (Doc. Nos. 13–2, 13–4, 13–8) (Dictionary of Occupational Titles entries for all jobs identified by vocational expert).[2] Plaintiff now argues the VE's testimony as to the level of literacy and language proficiency required for the jobs available to Plaintiff are inconsistent with the levels required by the DOT. (Doc. No. 20 at 2–3).

---

[2] The Court notes Doc. No. 13-8 is not the entry for DOT #919.687-014, but rather is the entry for DOT # 909.687-014, "Laborer, General." See (Doc. No. 13-8). Nonetheless, DOT #919.687-014, Cleaner II, also requires reading 95-120 words per minute and the ability to recognize the meaning of 2,500 two- or three-syllable words. See DOT # 919.687-014, 1991 WL 687897.

7

The Court, however, finds the ALJ properly relied on the VE's testimony. During the hearing, the VE offered four medium level jobs in response to the hypothetical question from the ALJ. (Tr. 61–62). The ALJ then asked the VE which of the medium level jobs would be available if Plaintiff was limited to jobs "with no requirement to read or write in English," and the VE identified the three jobs noted above. (Tr. 62). The ALJ expressly asked the VE whether her testimony was consistent with the DOT, and the VE stated it was. (Tr. 63). The VE explained that while the DOT does not specifically address the ability to read or write in English per se, the VE understood the ability to read and write in English was implied. Id. Based on the VE's testimony, the ALJ determined that although illiteracy "is not included in [Plaintiff's [RFC] . . . the jobs cited by the [VE] can be done without the ability to read and write in English." (Tr. 20). As the record shows, the ALJ directly questioned the VE about the consistency of her testimony and the DOT, and the VE provided a sufficient explanation, appearing to rely on her prior relevant experience as grounds for finding no conflict. See Fisher, 181 F. App'x at 365 (recognizing an ALJ may rely on conflicting VE testimony if he finds it is based on the VE's own experience in job placement or career counseling (citing SSR 00-4p)). Accordingly, the Court finds the ALJ satisfied SSR 00–4p and the ALJ's step five analysis was proper.

Moreover, even assuming a conflict exits and the ALJ failed to explain and resolve such conflict, a violation of said duty is harmless because the ALJ would have reached the same result regarding disability. See Joines, 2015 WL 1249579, at *9 (citation omitted) (finding "the ALJ's failure to explain any reconciliation of a conflict is harmless because the ALJ would have reached the same result regarding disability notwithstanding such error"). In Joines, the plaintiff alleged the ALJ erred by failing to address the discrepancy between the VE's testimony as to the level of illiteracy and language proficiency required for the jobs available to him and the levels required

8

of those jobs by the DOT. Id. at *7. The court held, however, even assuming a conflict exists and the ALJ had an obligation to address such conflict, any failure by the ALJ to explain reconciliation of the conflict is harmless error. Id. at *9. There, as in the case at bar, the plaintiff's argument about the conflict between the VE's expert testimony and the DOT was premised upon a finding that Plaintiff is illiterate. See id.; (Doc. No. 20, p. 3) ("If a claimant cannot read or write in English, then he cannot perform a job that requires the ability to read and write in English."). However, like in Joines, the ALJ in this case did not find Plaintiff to be illiterate or unable to communicate in English. See Joines, 2015 WL 1249579, at *9–10; (Tr. 20). Rather, the ALJ found Plaintiff had "marginal education" and "is able to communicate in English."[3] (Tr. 20). Given the ALJ did not find Plaintiff was illiterate and unable to communicate in English, any discrepancy between the DOT and the VE's testimony regarding the impact of illiteracy on the jobs available to Plaintiff would have had no impact on the ALJ's ultimate determination of Plaintiff's disability. Finding any error committed by the ALJ pursuant to SSR 00–4p was harmless, the Court will not disturb the ALJ's decision. Accordingly, Plaintiff's second objection is OVERRULED.

**C. Plaintiff's Objection to the M & R Concerning RFC Formulation**

Plaintiff's third objection is the M & R incorrectly affirmed the ALJ's determination of Plaintiff's RFC. (Doc. No. 20, p. 3-5).

Plaintiff first argues the ALJ's determination that Plaintiff could perform medium work with the enumerated restrictions is not supported by substantial evidence. Id. at 3. The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and

---

[3] The Court notes Plaintiff has failed to identify any apparent conflict between a limitation to "marginal education" and the DOT requirements of the jobs identified by the VE. See Pearson, 810 F.3d at 209–10 (noting SSR 00–4p requires ALJs to resolve any apparent conflict between a plaintiff's RFC and the DOT definition of jobs recommended by the VE).

related symptoms. SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996); see also 20 C.F.R. § 404.1545(a)(1). SSR 96–8p requires the ALJ to consider "all the relevant evidence in the case record," including a claimant's medical history and symptoms and laboratory findings, the effects of treatment, reports of daily activity, recorded observations, medical source statements, and objective effects of symptoms. SSR 96-8p, 1996 WL 374184, at *2, *5; see also 20 C.F.R. § 404.1545(a)(3). An ALJ must "include a narrative discussion describing how the evidence supports each conclusion" in the plaintiff's RFC, Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quotations omitted), and discuss which evidence the ALJ found credible and why, see id. at 189 (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)). Once the ALJ performs a function-by-function analysis, only then may an ALJ express the RFC of the exertional levels of light, medium, heavy, and very heavy. See SSR 96-8p, 1996 WL 374184, at *1.

Here, as the M & R notes and a review of the record confirms, the ALJ considered all the relevant medical evidence, as well as Plaintiff's own allegations regarding his symptoms and daily activities. (Tr. 17–19). Importantly, the ALJ gave several reasons, citing to the record, for discrediting Plaintiff's allegations that he was unable to perform the requisite jobs functions. Id. The ALJ also evaluated Plaintiff's credibility in determining Plaintiff's RFC as required by Mascio. Ultimately, the ALJ concluded Plaintiff was limited to medium work as defined in 20 C.F.R. § 404.1567(c) with additional limitations. (Tr. 17). Accordingly, the Court finds the ALJ's RFC assessment complies with SSR 96-8p and is supported by substantial evidence.[4]

---

[4] Plaintiff appears to suggest that because the ALJs in 2013 and 2015 limited Plaintiff to light work, and because there was no additional evidence before the ALJ in 2017, the ALJ erred in limiting Plaintiff to medium work in 2017. See (Doc. No. 20 at 3). However, nothing in the regulations, see 20 C.F.R. § 416.1477(b), nor in the Appeals Council's remand order, (Tr. 202), diminished the ALJ's statutory authority to reweigh the evidence before her and make findings of fact after remand. Thus, to the extent Plaintiff argues the ALJ's deviation from the 2013 and 2015 RFC determinations warrants remand, the Court rejects the argument.

The Court also rejects Plaintiff's assertion that the M & R relied on the Commissioner's post hoc rationalizations in support of the ALJ's RFC determination. See (Doc. No. 20, p. 4). Rather, the M & R, as noted above, explained how substantial evidence in the record supported the RFC determination, discussing how the ALJ cited to both medical and opinion evidence—including some of Plaintiff's own allegations—that Plaintiff was capable of performing medium work with some limitations.

Next, Plaintiff argues the ALJ erred in failing to consider Plaintiff's obesity when formulating his RFC. (Doc. No. 20, p. 4-5). The ALJ has a duty to evaluate the intensity and persistence of a claimant's symptoms. See 20 C.F.R. § 404.1529(c). However, that duty does not extend to conjecture as to the impact of claimant's symptoms. Rather, the claimant has the burden of furnishing evidence supporting the existence of a condition and the effect of such a condition on his ability to work on a sustained basis. See 20 C.F.R. §§ 404.1512(a), 404.1545(a)(3); see also Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). Yet, Plaintiff has failed to do more than suggest the ALJ should have speculated as to how his obesity has impaired his ability to work. See (Doc. No. 20, p. 5). However, SSR 02–1p prohibits the ALJ from engaging in guesswork. SSR 02–1p, 2002 WL 34686281, at *6 (Sept. 12, 2002). SSR 02–1p expressly provides

> "[W]e will *not* make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. *We will evaluate each case based on the information in the case record*."

Id. at *6 (emphasis added). As SSR 02–1p makes clear, it is not the mere presence of an impairment such as obesity which determines disability, but rather the effect the impairment has on the claimant's ability to function and perform work-related tasks.

11

Here, Plaintiff alleges no facts and points to no evidence in the record to support his position that his obesity places significant limitations on his ability to work. Because Plaintiff has not identified how his obesity has limited him to a greater extent than the ALJ found, he has failed to carry his burden. See Brown v. Astrue, No. JKS–09–1792, 2011 WL 129006, at *2 (D. Md. Jan.14, 2011) ("Having identified no evidence to suggest that his obesity caused greater limitations than the ALJ assigned, [the plaintiff] has shown no basis for remand.").

Finally, Plaintiff argues the ALJ erred in drawing adverse inferences about the frequency of his treatment without considering the reasons for the infrequency. (Doc. No. 20, p. 5). Pursuant to 20 C.F.R. §§ 404.1530 and 416.930, a claimant cannot be found disabled if he does not follow prescribed treatment without good reasons. 20 C.F.R. §§ 404.1530, 416.930. However, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis [failure to follow prescribed treatment] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017) (rescinding and superseding SSR 96-7 (SSR 96–7p, 1996 WL 374186 (July 2, 1996)), which previously stated an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations," such as the inability to afford treatment and lack of access to free or low-cost medical services).[5] A claimant's failure to obtain medical treatment that he cannot afford cannot justify an inference that his condition was

---

[5] The Court notes SSR 96-7 was rescinded and replaced by SSR 16-3p on March 28, 2016 and applied to all decisions issued on or after that date. See SSR 16-3p, 2017 WL 5180304, at *1. Although Plaintiff applied for benefits in 2012, (Doc. No. 13, p.3), the decision from which he appeals to this Court was issued on December 5, 2017, after being remanded from the Appeals Council on October 14, 2016. (Tr. 22, 109). As both dates fall after March 28, 2016, SSR 16-3p is properly applied here. In any event, both rulings articulate substantively the same point as pertains to this order—the ALJ must not draw inferences about a claimant's symptoms based solely on the fact that the claimant did not seek treatment.

12

not as severe as he alleges. Mickles v. Shalala, 29 F.3d 918, 929–30 (4th Cir. 1994) (citations omitted).

Here, however, the ALJ draws no adverse inferences about the severity of Plaintiff's symptoms from his failure to seek treatment.[6] Compare Craig v. Colvin, No. 2:13-cv-27-BO, 2014 WL 2039591, at *3 (E.D.N.C. May 8, 2014) (determining the ALJ did not comply with the requirements of SSR 96 –7p because the ALJ failed to consider the plaintiff's ability to afford surgery before concluding the plaintiff's failure to have the recommended surgery suggested the plaintiff's "symptoms are not as intractable as alleged"), and Wright v. Astrue, No. 1:10-cv-250, 2011 WL 6179943, at *4 (W.D.N.C. Dec. 13, 2011) (noting the ALJ's finding that Plaintiff's failure to receive mental health treatment "suggest[ed] that [Plaintiff's] mental health condition is controlled with medication" was an error because the ALJ failed to consider any explanations from the plaintiff) (alteration in original), with Sturm v. Colvin, No. 6:13-1097-MGL, 2014 WL 3809495, at *10 (D.S.C. July 30, 2014) (holding an ALJ's mere observation that Plaintiff scheduled a medical procedure and never rescheduled was appropriate and did not constitute an adverse inference). Rather, the ALJ merely observes there were no treatment records from February 2010 to March 2012.[7] (Tr. 19). The Court finds this observation was appropriate, particularly considering Plaintiff has the burden of producing evidence showing he has a severe impairment and showing how severe the impairment is during the time Plaintiff alleges he is disabled. See 20 C.F.R. §§ 404.1512(a), 416.912(a). Accordingly, Plaintiff's third objection is OVERRULED.

---

[6] In fact, the ALJ acknowledges Plaintiff's inability to afford medical treatment. (Tr. 17).
[7] The Court similarly finds that the ALJ's comment about Plaintiff's employment during that period, see (Tr. 19), was merely an observation, particularly in light of the fact that Plaintiff himself testified that he had worked during that period. See (Tr. 39–40).

13

## IV. Conclusion

IT IS THEREFORE ORDERED that Plaintiff's Objections (Doc. No. 20) to the M & R are OVERRULED; the M & R (Doc. No. 19) is AFFIRMED and ADOPTED for the reasons set forth herein; Plaintiff's Motion for Summary Judgment (Doc. No. 12) is DENIED; Defendant's Motion for Summary Judgment (Doc. No. 16) is GRANTED; and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: September 12, 2019

Frank D. Whitney
Chief United States District Judge